Mr. Spurgeon. May I proceed, Your Honor? Please proceed. Thank you, Your Judge. Good morning, Your Honor's counsel. I'm Stephen Spurgeon from the state of Texas. I'm here to represent Sergio Carrillo Murillo for, I guess, my second trip to visit you folks. And thank you for the opportunity to be present. This, as two of the panel members know, is a post-conviction writ brought under Section 2255 alleging bad immigration advice under Padilla v. Kentucky and the ineffective assistance of counsel standard under Strickland. The court, of course, is very aware of the two prongs that are available in Strickland and is aware of the procedural history of this particular case. Briefly, Mr. Carrillo Murillo filed a post-conviction writ timely with the district court in Alexandria. The district judge, without a hearing, denied the writ on prejudice only, which is perfectly okay under the Strickland standard, and issued a certificate of appealability on the prejudice standard in light of the recent case at that time of Lee v. the United States. Going back and recounting all the facts up to the first time the case was here. But we are aware of all of that. So my question is, do you read Murillo 1, our first opinion, to hold that if an attorney fails to inform a non-citizen defendant that deportation is mandatory or automatic, that that constitutes deficient performance? Absolutely. Maybe you could explain why. I can explain why. First of all, let's look at the language of the case. The language of the case presumes that you have to find, and presumes expressly states, in order to find prejudice, it has to be based upon the lawyer's performance. And I was thinking about this this morning, how to give you an example and the best example I might can give on this. And it's not great, but it fits from where I'm from. And this case is a little bit like a Sunday afternoon bull riding event at a rural West Texas rodeo arena. You've got two prongs. The prong is the bull. Now, these bulls are trained to be mean, and they're trained to spit, and they're trained to fight, and they're trained to wiggle and do things that bulls that are out in the pastures don't do. Now, I do like to watch the PBR sometimes. However, I think your best argument here is the case law. SWABI stands for the position that, of course, that the plea agreement isn't controlling on prejudice. SWABI stands for the position that the counsel needs to advise the client that deportation is categorically a certainty. And when this case went back, there's no new evidence that counsel did inform Mr. Murillo of that, right? They did not. They never said. Let me address that precisely, OK? There was an affidavit or a declaration that was provided in this case first time it came here from defense counsel, JA 101, where the lawyer says at no time, at no time, that I provide Mr. Carrillo with immigration advice. How do you get around the plea agreement? Pardon me? You can't get around the plea agreement. I don't think... You can't get around... You haven't mentioned the plea agreement yet. You can't get around the plea agreement. Read the plea agreement. This fellow confirmed that he wished to plead guilty. This is in quotes. To plead guilty regardless of any immigration consequences that his plea may entail, comma, even if the consequence is his automatic removal from the United States. End of quote. That was in the plea agreement that you and him signed. I didn't sign it. Well, you're the counsel. You're the only one we got here. His counsel and the defendant signed that. Yes, Your Honor. May I respond? That's the plea agreement. And the court accepted that. Yes, it did. But let's get to that point. The district court did. What did Murillo 1 say about the plea agreement? That the plea agreement could not bear the weight that the government was trying to place on it. Your Honor, let me address this. Okay. I'm trying to help you, but you will not be helped. Forgiving immigration pass. The plea agreement and the judge, or should the lawyer be responsible? And let's talk about what happened to the defense counsel on this case from the transcripts when we had the hearing with Judge Tringa. Talk about what's happened to who? Let's talk about the transcripts from the evidentiary hearing before Judge Tringa when it was remanded back to discuss the ineffective assistance of counsel. Justice Stevens clearly says it is quintessentially the duty of the lawyer under the Sixth Amendment to give accurate immigration advice of immigration consequences. And his lawyer advised him to sign the plea agreement. Well, let's talk about it. Here's the questions. I asked Ms. Martel regarding her signed declaration that quote, at no time did I provide Mr. Carrillo with immigration advice. I asked her on the stand. I said, Ms. Martel. And that was sworn to before the judge. This was before the plea agreement. This hearing was done. And I asked Ms. Martel, is that true? Is it true that you didn't give any advice? And she says, that's what it says there. That's correct. And I said, is that truthful? Is it truthful when you said that? That's a yes or no. And Ms. Martel said, I believe I didn't. Judge Tringa jumped in. And he said, I'm sorry. You believe he did what? And I believe it was truthful. Ms. Wilkinson, it's fine to interrupt you. And then the government counsel asked a question. All right. You go ahead with your argument. You go ahead. I will rescind my question. Then the government counsel asked the question, did you give immigration advice? She says, I would say no to that. They ask it again. Did you provide immigration advice regarding Mr. Carrillo's immigration? You need to understand that when you come to court in Fourth Circuit, you don't interrupt the presiding judge. I apologize. It wasn't my intention to interrupt. I got carried away and didn't hear the voice. I will try to overlook your rudeness. Thank you, Judge. Your question, sir. Let me ask this. Why, as a practical matter, would you want the plea agreement rescinded if the ultimate consequence is going to be that he's going to be facing trial with a substantial amount of evidence against him? And if he's convicted, there is a mandatory five-year minimum. And it seemed to me, in light of that, that the lawyer negotiated a pretty good deal and helped him to avoid a five-year mandatory minimum. And I'm wondering if we can find, just on the performance probe, an ineffective assistance of counsel when the result achieved is seemingly, as a practical matter, favorable and beneficial to the client. Your Honor, it's a pretty good deal if you're a citizen of the United States and after you serve your prison time, you get to go back home to your family. Not a good deal when you're looking at banishment forever. If you prevail here, you're going to end up getting him in prison for a longer time. And that's right. You're the next one that will be. Didn't Murillo 1 answer that question already? Murillo 1 found prejudice and assuming deficient performance and assumed that if the counsel did not advise him that deportation was mandatory, then that would be deficient. But we need that factual finding. So prejudice has already been established by Murillo 1, correct? And under the mandate rule, Judge Trinkaus held to that. So the issue for the district judge on remand was performance problem. Right. And he found that there was no deficient performance. But you can't get... So the issue on appeal is whether to affirm or reverse the district judge on the performance problem. That is the issue. That is... If he wasn't entitled to assign it, we couldn't decide it. We couldn't send it back. Well, he was... Why do we send it back if we're not going to let him decide the issue? We remanded it. The court remanded it to have him decided. He decided it. Now, the question is, do we affirm or not what he decided? We remanded to have the evidentiary record developed as to whether or not the council actually told him that he was categorically deportable, as is required by our precedent in SWABI. Is that correct? Correct. Strickland provides that a lawyer, that a judge can skip the first prong on ineffective and go right to prejudice. It doesn't matter whether the lawyer was ineffective or not, if there's no prejudice. Yeah, but our court remanded it to have the district judge find the first prong, decide the first prong. But the first prong is limited to the language of the court, the opinion that was sent back to him, where prejudice, because there's prejudice, you can't get the prejudice if the lawyer wasn't ineffective. It's built in into the whole definition of the second prong. In Murillo 1, we did not find that the lawyer was ineffective. We assumed ineffectiveness and remanded it for a development of the factual record to determine if what we assumed happened did happen. And the record appears to bear out that what we assumed happened and would be deficient did happen. Is that, is my understanding of that correct? It is correct, Your Honor. And the record below leaves, to quote this court, little doubt that avoiding deportation was appellant's main priority. Not the sentence, that's always a factor, but his main priority was to avoid deportation. And Chief Justice- That's not what the plea agreement said. The plea agreement that when he pled guilty, and this is a drug smuggler we're talking about, a drug smuggler, a confessed drug smuggler that you represent, and he wanted to plea guilty regardless of the immigration consequences, even if the consequence is automatic removal from the United States. That's what the plea agreement said. Boilerplate language- That's plain English. Boilerplate language doesn't impact prejudice, and it certainly doesn't impact whether a lawyer was ineffective, particularly when this court's already found prejudice. Prejudice was found in Murillo 1, so we don't need to talk about that. It's the first prong that we're all talking about. I mean, Judge King, you asked the question of what happens if he gets remanded back, if you guys make a decision and he gets remanded back for a trial. Well, Chief Justice Roberts addressed that in the Lee decision. Sometimes a Hail Mary pass is appropriate. Sometimes even against overwhelming evidence of guilt. Sometimes against a longer prison sentence. A defendant's willing to throw a Hail Mary pass to remain with their families when they have a shot to remain with their families, a shot not to be deported for life, a shot not to be banished from a country they've lived in since they were seven years old. What all you're saying is contrary to the plea agreement, to what I just read to you. Well, I'm- Even the immigration consequences he will accept, even if the consequence is automatic removal. That's about as explicit as you can get. But doesn't it appear in every plea agreement? Well- Whether you're a citizen or not? What appears in Murillo 1 is, quote, we hold, however, that a single line from a plea agreement cannot bear the weight the government would like. Appellant demonstrated a reasonable probability that had he fully understand the implications of his guilty plea, he would not have pled guilty. And that is why we held that there was prejudice. Correct. Correct. And Judge King wrote a beautiful dissent. Thank you, counsel. Thank you. He always does. Politely as well. Sit down. Not everybody agreed with that. Ms. Bechara. Good morning and may it please the court. Jacqueline Bechara for the United States. As I understand my friend's argument, he is not contesting the district court's factual findings after the evidentiary hearing as to the substance of defense counsel's communication to her client. No, because the district court, because she never, our counsel below never advised appellant that deportation was mandatory or categorical as required by SWABI. So I agree with you as to the factual point. She did not tell him that deportation was mandatory. So the question for the court in resolving the performance prong is whether that was objectively reasonable, consistent with Padilla. The government's position is that it is. Because her warning that he would be deportable, removable and subject to immigration deportation proceedings after completing the service of his sentence was sufficient to put the defendant on notice. Let me ask you this. If the attorney advised and said that deportation was mandatory, would that have been an accurate statement? Because the attorney general in the Department of Justice always has the discretion of canceling removal or canceling deportation for a variety of reasons. I mean, there's ultimate discretion is large in the Department of Justice. And so I'm wondering if the statement that something is mandatory, I'm wondering if that's an accurate statement in light of the complexity of immigration law and in light of the ultimate discretion that the Department of Justice possesses. I mean, I don't want to see lawyers meet themselves going and coming and making statements that wouldn't be accurate and then coming up here on a claim of deficient performance. And that's one of the problems that I have. If they stress the mandatory, at the end of the road by saying the deportation is mandatory, that would have pushed the individual to trial. And if the individual had gone to trial, then that would have meant a five-year mandatory minimum. And so given the consequences down the road of a five-year mandatory minimum and given the fact that mandatory definition, mandatory may not have been completely accurate given the department's discretion. And this is I'm wondering if it's defective performance to achieve a favorable plea agreement and avoid what arguably at least might have been oversimplified advice. See what I'm saying? Yes, if I could respond. So you are right to flag this concern about whether the defendant's proposed warning would actually be correct. At least three other courts of appeals, the Fifth Circuit in Armendariz, the Eighth Circuit in Ramirez-Jimenez and the Seventh Circuit in Chazon all expressed concern that this rule to say that the defendant would be deported, that deportation is mandatory or automatic would possibly be incorrect. Where is it a rule? Sorry? You're questioning this rule. So it's a rule where? I'm sorry, the defendant's proposed rule.  It's not clear that that would be correct advice. So I disagree with the suggestion that SWABI made a holding that that is what Padilla requires because that's not what the court was confronted with in SWABI. What does categorically deportable mean? I'm not sure. That's a judicial gloss on the statute, right? But the statute says deportable. The notice to appear that was actually issued to the defendant here, that's at JA-143, it charged him with being removable, right? This is categorically is not- I did interrupt you and I want to hear the rest of your answer about those other cases in response to Judge Wilkinson's question. Thank you, Judge Thacker. I'll point out what SWABI says, effective representation requires that counsel provide correct advice. Yes. Correct advice. And what Judge Wilkinson offered to you would be correct advice. Correct advice under the law. And what the plea agreement said would be correct. And I think you were about to tell us about cases that also support what Judge King just said. So-  Three circuits, you said. Three circuits have recognized- The eighth, the ninth, the- Which were they? The fifth, the eighth, and the seventh have said- The fifth, the eighth, and the seventh, you say- Defendant's proposed warning- Okay. May not be correct advice because of the room for discretion. I think there's actually two levels of discretion, right? There's executive branch discretion that Judge Wilkinson has addressed, but there's also significant discretion on the part of the immigration judge. I know that my friend focuses on- The Attorney General of the United States has vast discretion in the immigration matter. The Attorney General. I mean, the immigration courts work for the Attorney General, right? Well, this is- They're part of the Department of Justice. This is an aggravated felony- You work for the Department of Justice, all of you. The ones who are negotiating these pleas, deciding what to prosecute. Do you all work for the Attorney General of the United States? And Swabie says, the lawyer has to give them correct advice. Sure, they have to give them correct advice. You always want to give your client their correct advice. You always do. And the district court made a finding that Ms. Martel did not provide any incorrect advice here. The district court made a finding that counsel provided correct advice. You said district court made a finding she did not provide incorrect advice. Did she provide correct advice as Swabie requires? Did the district court say she found- gave him correct advice? The district court found that she advised him that he would be debortable, removable, subject to immigration proceedings, and that satisfied her obligation under Padilla. Did the district court say- You said the district court said she did not provide incorrect advice, clearly said she did not provide incorrect advice. Did the district court say that she provided correct advice, which is the language from Swabie that Judge King read? So, I don't think there's a finding to that effect, Your Honor. Could I go back to Judge Wilkinson's point? I know I'm happy to address other questions, but I just wanted to reiterate that we don't have to, or you don't have to, just rely on what other circuits have said. We also have two immigration lawyers that the defendant presented at the evidentiary hearing who said that they would not give the advice that a defendant would be deported, right? Mr. Reyes testified that he could not make that kind of absolute statement, and then Mr.- Were they qualified as experts? Maybe they were deficient. Go ahead, I'm sorry. They were not qualified as experts, but they introduced themselves as immigration attorneys. Is it really? It makes them an expert, I guess. Or it makes them deficient, if that's what you're trying to imply. But please finish. Okay, I would just add, Mr. Drake said the same, a similar thing. It's 100% impossible. The Strickland standard, to come back to the performance prong, in order to be judged ineffective, it has to be well below the professional norm. And, you know, I'm just wondering, as a general rule, when a lawyer secures what, on the face of it, seems to be a very beneficial result, whether that is below a professional norm, it seems to me that may be seen as a valuable professional service. But I'm also, I'm nervous about pushing lawyers in the direction of requiring them to say something that would be arguably incorrect. And we can debate that. Because if you say, this is mandatory, that you're going to be deported, rather than there's a risk of deportation or something. I'm wondering if we would lead clients into disastrous decisions. I mean, they say, we're going to go to trial. And looking at the evidence here, the evidence against this gentleman is pretty overwhelming. If he'd gone to trial, I can't see that he would have stood a very good chance before a jury. And the gentleman would have been given the crimes that were charged if the case went to trial on the charged offenses. He would have been in jail a mandatory minimum of five years. And the maximum is way higher than that. So looking at Strickland, and the prejudice has been decided, but the performance prong, I really wonder whether this is materially or substantially below the kind of things we expect from attorneys representing clients that may be subject to immigration consequences. I think Strickland requires situations where the lawyer screws up pretty badly. At least that's the way I read the opinion. Looking at the whole record, sounded like a pretty good lawyer. To me?  Strickland and this court's precedent consistently admonishes that courts are to indulge a strong presumption that counsel's performance was reasonable. And Strickland also advised against an overly searching inquiry into the performance prong precisely because of the adverse follow-on consequences that Your Honor is describing, right? In terms of unintentionally, perhaps forcing or incentivizing defendants otherwise wouldn't to go to trial because a defendant is in, or I'm sorry, a defense attorney is incorrectly advising that they absolutely will be deported. And the other thing to think about is to the extent the court is writing a rule about what other defense attorneys have to do in other cases, the Fifth Circuit recognized that in order to be able to state categorically that a defendant absolutely would be deported means that the criminal defense attorney has to basically boil the ocean of the immigration code to make sure that there is no potential avenue for relief. And of course, that doesn't take into account all of these other levels of executive discretion that we have been addressing. And Strickland was particularly concerned about- Well, as Judge King pointed out, he's a drug smuggler. I don't think the Department of Justice is in the business of just not deporting aggravated felon drug smugglers. Are they on a regular basis? Both Ms. Martel and Mr. Reyes testified that they personally knew of defendants with aggravated felony convictions who were still here in the United States. Probably some of them cooperate with the government. Yes, and there was a cooperation provision. In bigger cases, and they get lenient treatment from the attorney general, attorney general's representatives. I mean, there's a lot of possibilities. What you want us to do is what?  Absolutely. Okay. And what's the result of them? What would result from that? What's that mean? If we simply affirm Judge Tringa on the remand, is there any other result that we need to consider? What the impact of that is on the first opinion or what the impact of that is on this felon Morello? Is that, that's not pertinent, is it? No, because the district court... The question is whether Judge Tringa was right or wrong. On performance, correct. The district court expressly did not revisit... On the performance prong as to this lawyer in this case. Yes. That's the only issue before us. That's correct. Unless the court has further questions for me, we ask that you affirm. Any questions? Thank you. I'm going to have some rebuttal time. Briefly. I'd like to address two points. One to Judge King, one to Judge Wilkinson. Judge Wilkinson, you asked the question about the situation with the lawyer. What's the proper advice? Are we going too far? Supreme Court's been clear. They have to give available advice. The advice that's available. That's the quotation from the Padilla case. Available advice. In this case, my client is... Judge King is a drug trafficker. An aggravated felony drug trafficking offense under section 1001A43B of 8 USC states that that is an aggravated felony. There's a big difference between aggravated felony drug cases and aggravated felony other cases. Alien smuggling, there's a pardon for. Theft, there's a pardon for. Lots of weight. Aggravated felony drug trafficking cases, you only got to look at three statutes. You got to look at the statute that says, if you're convicted of a drug crime, you're deportable. That's 1237A2AB, I think it is. Under the immigration, under the 8 USC. You got to look at that statute. So if you're not a citizen, you got a drug crime, that puts you in proceedings. Number two, there's a statute that's 1227A23i, that's the aggravated felony. Any alien convicted of an aggravated felony is deportable. Second statute you got to look at. Third statute, you got to look at what's the definition of an aggravated felony. Aggravated felony under section B includes drug traffickers. Finally, when you've got these kinds of deportable crimes for a lawful permanent resident, as Mr. Carrillo Maria was, he's lawfully in the United States. You can't get a pardon from the immigrant. The attorney general can't give a pardon if you get an aggravated felony. The rule under section 240A, that section is 1229B lowercase a. That's the statute that sets out the attorney generals being able to grant these things. Mr. Carrillo Maria is not eligible at all for this, zero. This is not a hard case to find deficiency based upon these facts, period. You don't got to boil the immigration code. You just got to read the statutes. Any lawyer can read the statutes and it's not a duty that a lawyer can punt. We've got a responsibility. Maybe it takes a little extra work. Maybe you got to try to negotiate a non-deportable plea. Sometimes you can negotiate a drug trafficking case to 1546, which is the importation of other goods. That's not a drug trafficking case. It's not an aggravated felony. Other things you can do. So the point I would like to make is that this isn't a hard case to find deficiency. You just got to look at the statutes, read the statutes. I think that covered it. Any other questions? Thank you, Judge. Thank you for having me. We will come down and greet counsel and then we'll take a brief recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Robert B. King, Stephanie D. Thacker